# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **MERLE TEMPLE, JR.,**<br>   Movant, | **CRIMINAL NO.**<br>**1:04-CR-0568-2-CC-GGB** |
| v. | **CIVIL ACTION NO.**<br>**1:12-CV-0427-CC-GGB** |
| **UNITED STATES OF AMERICA,**<br>   Respondent. | **MOTION TO VACATE**<br>**28 U.S.C. § 2255** |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Merle Temple, Jr. ("Temple" or "Movant") was convicted in this district and sentenced on September 11, 2006. On June 22, 2011, Temple filed a petition under 28 U.S.C. 2241 to correct his sentence in the Northern District of Alabama. *See Temple v. United States*, 2:11-cv-02130-IPJ-JEO (N.D. Ala. Jan. 23, 2012) at Doc. 1. The court in the Northern District of Alabama construed Temple's motion as one under 28 U.S.C. § 2255, and transferred it to this court on January 23, 2012. [*Id.*; Doc. 532-1].[1]

Temple challenges the constitutionality of his 97-month sentence that was imposed on September 11, 2006 [Doc. 284], following his guilty plea on January 10, 2005 [Doc. 62]. Presently before the Court for consideration are: (1) Movant's motion

---

[1]The remainder of the docket citations will be to this case number.

to vacate, set aside or correct sentence [Doc. 532]; (2) the United States of America's (hereinafter "Government") response to Movant's motion to vacate [Doc. 535];[2] and Movant's reply [Doc. 537].

## I. BACKGROUND

On November 10, 2004, a federal grand jury in this district charged Temple together with co-defendants Linda Schrenko and Stephan Botes in an 18-count indictment. [Doc. 1]. Count One charged Temple and his co-defendants with conspiracy, in violation of 18 U.S.C. § 371:

> A. To embezzle, steal, obtain by fraud, convert, and misapply property that was valued at over $5,000 and was owned by and under the care, custody, and control of a State governmental agency which received in a one year period benefits in excess of $10,000 under a Federal program, in violation of Title 18, United States Code, Section 666(a)(1)(A); and
>
> B. To knowingly and willfully devise and intend to devise a scheme and artifice to defraud the State of Georgia and its citizens of money and property and the good, faithful and honest services of defendant LINDA C. SCHRENKO in her capacity as State School Superintendent, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and execute said scheme by means of wire transmission in interstate and foreign commerce, in violation of Title 18, Unified States Code, Sections 1343 and 1346 .

[Doc. 1 at 1-2].

---

[2]The Government's motion for an extension of time to respond to Movant's § 2255 motion [Doc. 534] is **GRANTED** *nunc pro tunc*.

Count One went on to charge, among other things, that the object of the conspiracy was for the defendants to obtain federal funds and to secretly funnel a portion of those funds to Schrenko, Temple and Schrenko's gubernatorial campaign.

Counts Two through Twelve of the indictment charged defendants Temple and Botes with aiding and abetting defendant Schrenko in eleven thefts of property, each having a value of more than $5,000, from the Georgia Department of Education ("DOE"), in violation of 18 U.S.C. §§ 666(a)(1)(A) and 2. [Doc. 1 at 14-15]. Counts Thirteen through Eighteen charged that co-defendants Temple, Botes, and Schrenko, aided and abetted by each other and others, devised a scheme involving wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2, to defraud the State of Georgia and its citizens of: (1) their money and property; and (2) the honest services of defendant Schrenko. [*Id.* at 16-17].

On January 10, 2005, Temple entered a negotiated guilty plea to Counts One, Two and Eighteen of the indictment. [Doc. 62]. In his plea agreement, Temple expressly waived the right to a direct appeal of his sentence on any ground other than an upward departure from the applicable sentencing guideline range or if the Government appealed and expressly waived the right to attack his sentence in any post-conviction proceeding on any ground. [Doc. 62-1 at 5].

AO 72A
(Rev.8/82)

Prior to the court's acceptance of Temple's guilty plea, the Assistant United States Attorney ("AUSA") gave a detailed statement of the elements of the offenses to which Temple was pleading guilty and the evidence that the Government would have presented if Temple's case had gone to trial. [Doc. 535-2 at 27-33]. Significantly, the AUSA stated that "[t]he government would have to prove, first, that the defendants knowingly devised or participated in a scheme to fraudulently deprive another of the intangible right of honest services *and* a scheme to deceive or cheat someone out of money or property by means of materially false or fraudulent pretenses, representations . . . ." [*Id.* at 29; *emphasis added*].

The AUSA stated that in 2002 Temple served as a deputy state school superintendent for the DOE. He had been appointed to that position by the state school superintendent Linda Schrenko. In or around July of 2002, Temple resigned from the DOE and began working full time on Schrenko's campaign for governor.

During June of 2002, Temple and Schrenko met Botes, who was introduced to them as a person who would be a potential contributor to Schrenko's gubernatorial campaign.

Co-defendants Schrenko, Botes, and Temple then entered into a scheme for Georgia Department of Education funds to be issued to companies controlled by Botes in return for Botes providing funds to Schrenko's campaign to become Governor of the

4

State of Georgia. Among other acts in furtherance of this scheme, Temple set up a bank account in the name of Paradigm Pioneers into which Botes wired funds totaling approximately $100,000, for the purpose of providing money to the Schrenko campaign. [Doc. 535-2 at 27-33]. Temple told the court that he was in substantial agreement with the AUSA's description of the evidence. [*Id.* at 34].

Temple's sentencing hearing was held on September 11, 2006. [Doc. 283]. Prior to imposing sentence, the district court heard testimony from several witnesses, including Temple's psychiatrist, Henry Ball. M.D. [Doc. 457 at 25-49]. Dr. Ball testified that he had treated Temple for 15 years, that Temple had obsessive-compulsive disorder ("OCD"), and that Temple's OCD significantly contributed to his commission of the crimes to which Temple had pleaded guilty. [Doc. 457 at 26, 32]. After hearing all of the evidence, the district court denied Temple's request for a reduction of his sentence based upon his OCD. [*Id.* at 67].

After consideration of the factors set forth under 18 U.S.C. § 3553(a), the district court sentenced defendant to a total term of 97 months of imprisonment, with concurrent terms of imprisonment of 60 months on Count One, 97 months on Count Two, and 97 months on Count Eighteen. [Doc. 457 at 68]. A Judgment and Commitment was entered against Temple on September 12, 2006. [Doc. 284]. Temple did not file a direct appeal of his conviction or sentence.

5

## II. DISCUSSION OF MOVANT'S CLAIMS

### A. Claim based on *United States v. Skilling*

Temple's first claim is based upon the case of *United States v. Skilling*, 561 U.S.___, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010). After Temple's plea and sentencing, the Supreme Court held in *Skilling*, that Congress intended the phrase "scheme and artifice to deprive another of the intangible right of honest services" to reach only those schemes to defraud the public that are based upon allegations of bribery and/or kickbacks. The Court in *Skilling* was interpreting statutes such as 18 U.S.C. § 1343 and 1346 that criminalized the use of interstate wire communications "to deprive another of the intangible right of honest services." *See United States v. Siegelman*, 640 F.3d 1159, 1172-73 (11th Cir. 2011).

Temple argues that *Skilling* makes clear that he could not be punished for participating in a conspiracy in which he did not intend to benefit personally and did not in fact benefit personally. Temple is incorrect in his interpretation of *Skilling*.

The indictment against Temple and his co-defendants charged a classic kickback scheme, i.e., that defendants caused funds from the Georgia Department of Education to be paid to companies controlled by defendant Botes in exchange for Botes providing

6

AO 72A
(Rev.8/82)

funds to defendant Schrenko's campaign to become Governor of Georgia.[3] The indictment contains specific allegations as to how Temple participated in and facilitated this scheme. *Skilling* narrowed criminal liability for honest-services fraud, but did not preclude honest services fraud convictions that arose from bribery or kickback schemes. *See, e.g., United States v. Spellissy*, 438 F. A'ppx 780, 784 (11th Cir. 2011) (affirming conviction under 28 U.S.C. § 1346 for scheme to bribe public official to secure contracts).

Furthermore, *Skilling* did not require that all of the participants in an honest services fraud benefit personally. *See United States v. DeMizio*, No. 08-CR-336 (JG), 2012 WL 1020045, at *9 (E.D. N.Y. March 26, 2012) (concluding that there is no requirement that a defendant-employee personally benefit in order to commit honest services fraud). *See also* 18 U.S.C. § 2 (providing that whoever aids and abets an offense against the United States is punishable as a principal). In any event, Temple admitted that he was in a romantic relationship with Schrenko. [Doc. 532 at 3]. Their relationship indicates that Temple had a personal motivation (apart from his employment) to participate in the scheme to benefit Schrenko. *See United States v.*

---

[3]*Skilling* described a classic kickback scheme as one in which a public official, in exchange for giving state business to a particular company, arranged for that company to share the moneys it received with entities in which the official had an interest. *Skilling*, 130 S. Ct. at 2932.

7

*McGregor*, No. 2:10cr186-MHT, 2011 WL 1576950, at *4 (M.D. Ala. April 4, 2011) (holding that benefit to the offender in an honest services bribery case does not have to be in the form of a direct payment of cash).

Moreover, Temple was convicted and given concurrent 97-month sentences for theft of federal funds and wire fraud to obtain money and property from the State of Georgia as set forth in Counts Two and Eighteen.[4] Those criminal charges are not in any way impacted by *Skilling*. A defendant who is charged in the conjunctive on both an invalid theory and a valid theory in the same indictment cannot show prejudice. *See Lomelo v. United States*, 891 F.2d 1512, 1518 (11th Cir. 1990).

For these reasons, Temple's claim based on *Skilling* is without merit.

### B. Claim based on Temple's alleged diminished capacity

In his second claim, Temple argues that he should have received a downward departure of his sentence due to his purported diminished capacity. He requests a hearing at which additional testimony can be presented on his mental condition in order to convince the district court to reduce his sentence. There are at least two reasons why this claim should be denied.

---

[4] Count Eighteen charged both honest services wire fraud and "traditional" wire fraud to obtain money and property by false pretenses and representations. [Doc. 1 at 16].

8

First, Temple's request for the court to reduce his sentence based on his mental condition is not a ground for relief under Section 2255. A prisoner is entitled to relief under Section 2255 only if the court imposed a sentence that: (1) violated the Constitution or laws of the United States; (2) exceeded the court's jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack. *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000). Here, Temple is seeking to re-litigate his request for a downward departure that was rejected by the district court at his sentencing. Re-litigation of a legally authorized sentence is not a proper basis for relief under § 2255.

Second, this claim in Temple's Section 2255 Motion is untimely.[5] Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one year period of limitation applies to a motion for post-conviction relief. 28 U.S.C. § 2255(f). Even assuming that Temple could avoid the application of his appeal waiver, the period during which Temple could file a collateral challenge to his sentence ran from the date the judgment of conviction became final. 28 U.S.C. § 2255(f)(1).

---

[5]The Government did not argue that Temple's first claim was untimely because the one year period during which Temple could file a Section 2255 action challenging his honest services conviction by application of *Skilling* commenced to run when that decision was issued by the Supreme Court on June 24, 2010. *See* 28 U.S.C. § 2255(f)(3).

9

The Court entered its Judgment and Commitment ("Judgment") on September 12, 2006. [Doc. 284]. When a movant does not appeal his conviction or sentence, the judgment becomes final when the time for seeking that review expires. *Mederos v. United States*, 218 F.3d 1252, 1253 (11th Cir. 2000). Temple had 10 days to appeal after the Judgment was entered on September 12, 2006. *See* Fed. R. App. P. 4(b). Because Temple did not appeal, the Judgment became final on or about September 22, 2006. Thus, Temple's deadline to file a motion under Section 2255 for a downward departure passed one year later, on or about September 22, 2007. Temple did not seek that until his motion to correct sentence was filed in the Northern District of Alabama on June 21, 2011. Therefore, Temple's motion to seek a downward departure of his sentence is untimely and thus barred by Section 2255.

## III. <u>CERTIFICATE OF APPEALABILITY</u>

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. §2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive

10

procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Movant has failed to make a substantial showing of the denial of a constitutional right. Accordingly, **I RECOMMEND** that a certificate of appealability be **DENIED**.

## IV. <u>CONCLUSION</u>

Based on the foregoing, **I RECOMMEND** that Movant's motion to vacate sentence [Doc. 532] be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED**.

**IT IS ORDERED** that the Government's motion for an extension of time to respond to Movant's § 2255 motion [Doc. 534] be **GRANTED** *nunc pro tunc*.

The Clerk is **DIRECTED** to terminate the referral to me.

**IT IS SO ORDERED AND RECOMMENDED**, this 27th day of December, 2012.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)